**Doris M. QUACKENBUSH et al., Appellants,**

**v.**

**Henry Joseph LAMKER et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 4, 1966.

Julius Leibson, C. M. Leibson, Louisville, for appellants.

Victor W. Ewen, Jones, Ewen & MacKenzie, Louisville, for appellees.

PALMORE, Judge.

This is an automobile accident case in which the jury found for the defendants and the plaintiffs contend they were entitled to a directed verdict and a judgment n.o.v. because the physical facts are conclusive in their favor. Cf. Crain v. Jones, Ky., 390 S.W.2d 640 (1965); Ison v. Mullins, Ky., 336 S.W.2d 599 (1960); Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S.W.2d 48 (1942). We are unable to accede to that viewpoint.

Both vehicles were proceeding eastward on Broadway near 15th Street in Louisville. 15th Street is one-way for northbound traffic. Broadway is a six-lane street with three 10-foot lanes for traffic moving in each direction, east and west. The defendant Lamker, driving a truck, was making a left turn to go north on 15th Street when a 1958 model Renault passenger car driven by the plaintiff Mrs. Quackenbush collided with the left rear portion of the truck. Numbering the eastbound traffic lanes on Broadway as 1, 2 and 3, No. 1 being the outer or southernmost, No. 2 the middle, and No. 3 the inner or northernmost lane next to the center line of the street, Mrs. Quackenbush says that she was going straight along lane 3 about five feet behind and to the left of the truck, which was in lane 2, when suddenly and without warning the truck cut to the left across her line of travel and her car struck it on the left side near its rear wheels. Lamker denies this and says he was in lane 3 all the time until he made the turn; that he had activated his left turn signal and paused momentarily to allow westbound traffic to clear the intersection and had then started turning across the center line of Broadway onto 15th when the Renault, which he had not noticed behind him, hit the left rear part of the truck.

Lamker said the bed of the truck was a little better than six feet wide and the truck itself 14 or 15 feet long. There was no other evidence of dimensions, including the size of the Renault. We may take judicial notice, however, that the Renault was what is commonly called a "compact" car, much smaller than the truck shown in the photographs introduced in evidence.

The license plate of the truck was located underneath the bed behind its left rear dual wheels, which also were beneath the overhang of the bed. The only evidence of damage to the truck was that the license plate was dislocated or dislodged and there were scrape marks under the bed between the left rear wheels and the back end of the truck, "up over where the license plate would be."

According to the police officer who investigated the accident, most or all of the debris appeared to have been deposited by the Renault and was entirely within lane 3. It indicated that at the moment of impact the Renault had moved partially into the crosswalk. When he arrived on the scene the Renault had not been moved and was standing wholly within lane 3, headed east but "slanted slightly" (in which direction he did not say).

Photographs of the Renault in its damaged condition suggest that the impact centered along a vertical line just to the left or inside of the right front headlight (which was not broken). Whether the hood of the car at this point was high enough to en-

gage the corner of the truck bed is doubtful. Mrs. Quackenbush said, "I did not hit the wheel. I hit the steel under the bed of the truck." She testified also that her car "just jammed under" the truck.

The pictures of the truck disclose several things with which the automobile could have come into contact after running up under the bed. They include, for example, one of the leaf-type springs which rest on the rear axle inboard from the dual rear wheels, and which extend in a fore-and-aft direction from the axle; the differential housing at the center of the rear axle; and the steel framework beneath the bed, to which the license plate is bracketed. The latter-mentioned framework presents a sharp corner just inside and to the rear of the license plate, and from the photographs it would have been altogether reasonable for the jury to deduce that the crease to the left of the Renault's right front headlight resulted from collision with this corner, which appears to be from two to three feet inside the left edge of the truck bed.

The strong point made by appellants is that the right front portion of the Renault, which unquestionably was within lane 3 at all times, could not have come into contact with the left side or rear of the truck if the truck also had been entirely in lane 3 when Lamker began to execute his leftward turn. Considering, however, that we do not have the dimensions of both vehicles, do not know their relative positions within the 10-foot expanse of lane 3, and do not know the exact part of the truck with which the car came into contact (this alone distinguishing the case from Ison v. Mullins and Crain v. Jones), that conclusion does not necessarily follow. Moreover, it is quite possible that the jurors decided that the truth lay somewhere between what Mrs. Quackenbush said and what Lamker said—for example, that the truck was not entirely within either lane 3 or lane 2 when its turn was begun, but was astraddle the dividing line between them. On this hypothesis, if Lamker gave due notice of his intention to make the turn, as he says he did (even, indeed, if he was completely within lane 2), it would not have been unreasonable for the jury to find that Mrs. Quackenbush was contributorily negligent.

The factual details of this case distinguish it from all of those cited by appellants in support of their contention that they were entitled to a directed verdict, and it is our opinion that the possible negligence of the respective parties was properly submitted to the jury.

The judgment is affirmed.